UNITED STATES BANKRUPTCY COURT   NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
In re:                                            Chapter 7

    RAMON RODRIGUEZ            Case No. 05-19599 (ALG)

                      Debtor.

---------------------------------------------------------x
RAFAEL JIMINEZ,

                      Plaintiff,        Adv. Proc. No. 06-01119 (ALG)

    - against -

RAMON RODRIGUEZ,

                      Defendant.
---------------------------------------------------------x

## POST-TRIAL MEMORANDUM OF OPINION

A P P E A R A N C E S:

LEONARD E. BRONNER, ESQ.
Attorney for Rafael Jiminez
1270 Broadway-Suite 605
New York, NY 10001

FOTOPOULOS, ROSENBLATT & GREEN
Attorneys for Ramon Rodriguez
 By:   William R. Sammis, Esq.
4160 Broadway
2nd Floor
New York, NY 10033


**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

      This case involves a fifteen-year dispute over the sale of a furniture store in the

Bronx. The Plaintiff, Rafael Jiminez ("Plaintiff"), sold the store to the Debtor-Defendant,

Ramon Rodriguez ("Debtor"). The Debtor believes that the Plaintiff breached the contract and has been engaged in protracted resistance to Plaintiff's attempts to collect the purchase price since then. The Debtor filed a Chapter 7 petition on October 3, 2005 and the Plaintiff responded with a complaint seeking to deny the Debtor a discharge, relying on §§ 727(a) (2), (3), (4)(A), (4)(D), and (5) of the Bankruptcy Code. For the reasons and upon the findings set forth below, the Court concludes the Debtor must be denied a discharge based on §§ 727(a)(5) and (3).

## BACKGROUND

This dispute began in September 1993 with the Plaintiff's sale of his furniture store, Jenny's Furniture, located at 720 East Tremont Avenue, Bronx, New York, to the Debtor. The parties used a form contract with some additions. (Debtor's Exh. E.) The total purchase price was $115,000, structured as follows: $50,000 due at the time the contract was executed, a secured promissory note for $8,000 payable within 60 days, and another secured note for $57,000. The Debtor agreed to collect receivables outstanding at the time of the sale for the account of the Plaintiff, in exchange for fifteen percent of the receivables collected. The Plaintiff agreed to assign the lease for the store to the Debtor, and no payments were due on either promissory note until the lease was delivered.

It appears likely that there were defaults on both sides. The Plaintiff never provided an assigned lease. Months before the sale, a stipulation of settlement between the Plaintiff and the landlord had been entered in Housing Court in the Bronx. It provided that the landlord's warrant of eviction was stayed provided that the tenant made certain payments. Although the record is not at all clear, it is the Debtor's position that

2

he was never told about the default, and it appears that the landlord immediately proceeded with eviction proceedings on the ground that the Housing Court settlement had been breached. It appears the Plaintiff shortly thereafter sent the Debtor two checks totaling $15,000 from the Dominican Republic, perhaps to remedy this default, but it is not entirely clear what the repercussions were. In any event, it appears that the Debtor never made the down payment and never paid anything for the store.

The Debtor testified that he closed the store for months after the purchase.[1] There must have been some arrangement with the landlord, however, because the store reopened with the Debtor's daughter as owner and son-in-law as co-owner, doing business as East Tremont Furniture Warehouse Corp. (Plaintiff's Exh. 10.) The store remained open until at least 2005 or more than 10 years.

The Plaintiff continued to pursue the Debtor for the sale price. There ensued years of dispute. Eventually the Plaintiff obtained a judgment against the Debtor in the Supreme Court, Bronx County, in the amount of $216,028.75, which appears to have been the purchase price plus interest of $100,423.75 and costs. (Plaintiff's Exh. 1.) This judgment was entered on July 14, 2003. Thereafter the Plaintiff tried to enforce the judgment, and the Debtor failed to pay. With respect to his enforcement efforts, Plaintiff testified that at the end of the July 4th weekend in 2005, on his way back from visiting his son out-of-state, the Plaintiff, along with his wife and daughter, stopped outside the East Tremont store and witnessed property being removed from the store and loaded into a truck. According to the Plaintiff, he had kept an eye on the East Tremont store religiously since May 2003. The Plaintiff followed the truck and claims it stopped at three other furniture stores—Blue Star Furniture on Webster Avenue in the Bronx, Blue

---

[1] Both the Debtor and the Plaintiff testified through Spanish interpreters.

3

Star Furniture on Jerome Avenue in the Bronx, and High Class Furniture in West New York, New Jersey.[2] The Plaintiff's daughter wrote down the license plate of the truck. (Plaintiff's Exh. 5.)

The Debtor did not deny that he took part in a transfer of merchandise at the time but testified that any removal of furniture over that weekend in July 2005 was in the ordinary course of business. The Debtor's nephew, Eliezer Lopez, a former employee at the East Tremont store, current employee of a furniture store now operating at the same premises, and son of the owner of the High Class Furniture store in New Jersey, who also allegedly took part in the weekend transfer, likewise denied that any such movement was not in the ordinary course of business.[3]

On October 3, 2005, the Debtor filed a Chapter 7 bankruptcy petition. He listed $88,300 on his schedules as creditors holding unsecured, nonpriority claims. Almost all of these claims are for credit card debt. The Plaintiff is listed twice on the Statement of Financial Affairs in the section for lawsuits, but no amount is set forth. The Debtor currently claims to have only a paltry income as a janitor in the building where he lives.

DISCUSSION

The Plaintiff seeks to deny the Debtor a discharge. The complaint requests relief pursuant to §§ 727(a)(2), (a)(3), (a)(4)(A), (a)(4)(D), and (a)(5) of the Bankruptcy Code.

---

[2] There is no question that these other stores were and apparently still are owned by close relatives of the Debtor. It is the Plaintiff's position that the Debtor controls them all and is the beneficial owner.

[3] Eliezer Lopez and another of the Debtor's relatives, Moises Rodriguez, were reluctant witnesses throughout this proceeding. On October 15, 2007, upon Plaintiff's allegation that the witnesses were willfully evading service of subpoenas for deposition testimony, the Court entered an order finding the witnesses in contempt and subjecting them to penalties should they not appear for a deposition. Both subsequently appeared for depositions and Eliezer Lopez appeared at trial. At trial, Moises Rodriguez did not appear to testify, and the Court denied the Debtor's request to introduce Rodriguez' deposition testimony into evidence because the Debtor had failed to show that Rodriguez was unavailable within the meaning of FED. R. CIV. PROC. 32(a)(3), made applicable to these proceedings by Bankruptcy Rule 7032.

The Court recognizes that the discharge provisions are construed liberally in favor of the debtor. *See In re Cacioli*, 463 F.3d 229, 234 (2d Cir. 2006), citing *State Bank of India v. Chalasani* (*In re Chalasani*), 92 F.3d 1300, 1310 (2d Cir. 1996), quoting *Bank of Pa. v. Adlman* (*In re Adlman*), 541 F.2d 999, 1003 (2d Cir. 1976). Nevertheless, the Court concludes that judgment is warranted under §§ 727(a)(5) and (3).

**Section 727(a)(5)**

Section 727(a)(5) of the Bankruptcy Code denies the debtor a discharge if "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities." In the words of Collier, "Section 727(a)(5) is broad enough to include any unexplained disappearance or shortage of assets." 6 COLLIER ON BANKRUPTCY ¶ 727.08 (15th ed. rev. 2008). The element of intent to deceive creditors, which is necessary under several of the other subsections of § 727, is not required. *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994). The plaintiff has the initial burden of going forward with evidence, but once the plaintiff has made a showing of "the disappearance of substantial assets or of unusual transactions, the debtor must satisfactorily explain what happened." COLLIER at ¶ 727.08, citing *First Federated Life Ins. Co. v. Martin* (*In re Martin*), 698 F.2d 883, 886 (7th Cir. 1983).[4] In *Chalik v. Moorefield* (*In re Chalik*), 748 F.2d 616, 620 (11th Cir. 1984) (per curiam), the debtor was denied a discharge under

---

[4] Generally, in an action to deny a debtor a discharge under § 727 of the Bankruptcy Code, once a plaintiff has shown a reasonable basis exists to believe there is a ground for denial of discharge, the burden shifts to the debtor to affirmatively rebut the plaintiff's case. *See Painewebber Inc. v. Gollomp* (*In re Gollomp*), 198 B.R. 433, 440 (S.D.N.Y. 1996), citing *First American Bank of New York v. Bodenstein* (*In re Bodenstein*), 168 B.R. 23, 28 (Bankr. E.D.N.Y. 1994); *Pereira v. Gardner* (*In re Gardner*), 384 B.R. 654, 662-63 (Bankr. S.D.N.Y. 2008) (collecting cases); *see also In re Halzman*, 69 F.2d 828 (2d Cir. 1934). In *Halzman*, a case under the Bankruptcy Act, the Circuit Court held that the referee erred by requiring "the objecting creditor to show more than reasonable grounds to believe that the bankrupt had committed an act which would bar his discharge" before shifting the burden to the debtor. *Id.* at 829.

5

§ 727(a)(5) because he failed to explain satisfactorily a substantial loan and the disposition of the funds. The Court further noted that a debtor's explanations of losses and unusual transactions must generally be corroborated by documents and convince the trier of fact of the debtor's veracity. *Id.* at 619.

In the present case the Court is convinced, based on the entire record, that the Debtor is a shrewd, competent businessman who has failed to explain satisfactorily the shortage of assets to cover his debts. The Debtor testified with conviction that he had purchased three or four stores before he engaged in the challenged transaction with the Plaintiff. After he purchased the East Tremont Avenue store from the Plaintiff, he put $120,000 into the store by his own testimony, including $30-40,000 in remodeling expenses. The Court has no difficulty in crediting this testimony. It also appears likely that the Plaintiff's defaults under the contract of sale for the store put serious burdens on the Debtor and caused him damage. It also apparently delayed the opening of the store under his management. However, the Debtor's testimony that he had no funds of his own afterwards and gave the store to his daughter, his daughter's husband and a vaguely identified "friend" because they "had money" was unconvincing and uncorroborated. There is no question from the testimony of the Debtor's nephew, Eliezer Lopez, who worked at the Tremont store during the years 2001-2005 (and apparently still works at a furniture store there called Dreamworld) that the Debtor was the person "on top of it all." The Debtor admits to being a manager and that he signed a filing with the New York City Department of Consumer Affairs as the "vice president," assertedly because the "owners" told him to sign those papers. The Court cannot credit the Debtor's implicit claim that he had no significant income from the East Tremont Avenue (or any other) store.

The record as a whole also establishes that the Debtor spent years attempting to shield himself from, first, the claims of the Plaintiff and subsequently from the judgment that the Plaintiff obtained on his claims. He not only put the East Tremont store in the names of family members, but he directed the dispersal of furniture from the store prior to its closing (and before it apparently reopened as Dreamworld Furniture) to other furniture stores that were owned or operated by his close relatives—or by him, if Plaintiff's allegations are correct. In any event, the Court credits the testimony of the Plaintiff and his daughter that they personally observed the Debtor direct the movement of furniture into a truck and followed the truck to the other stores. The Debtor's denial of any such action was not convincing, and he produced no records to demonstrate that the activity, over the July 4th weekend, was in the ordinary course of business. Nor did he produce anything to back up vague testimony that the East Tremont store closed because of a "fire" and because of a loss of income from the events of 9/11/01 (which had taken place years before).

Nor was the Debtor's account of his circumstances convincing. He admits to a small income from the East Tremont store up to 2005 but contends that most recent income has consisted of "janitorial fees" from his place of residence. He denies having anything to do with the three or four furniture stores that his relatives either own or operate, but did not claim any medical problem or reversal of fortune that turned him from a successful businessman into a janitor. His Chapter 7 petition shows consumer credit card debt of $79,000 plus $2,000 owed to Macy's.[5] All he said on the subject of

---

[5] The Debtor's largest single credit card debt was $16,700 owed to one bank. Copies of the Debtor's credit card statements attached to an adversary complaint commenced by American Express demonstrate that as of July 14, 2005, he had a corporate account issued on the account of the East Tremont furniture store; one

his lack of subsequent income is that he was working very few hours because he was busy with lawyers and "things in court," as a result of the Plaintiff's persecution.

The Court has no doubt on this record that the Debtor was purporting to work very few hours because of the Plaintiff's judgment. However, it is equally convinced that the Debtor has failed to explain satisfactorily a chain of events that demonstrate that he divested himself of apparent income and assets starting after his dispute with the Plaintiff began and continuing up to the date of his bankruptcy petition. In short, the Debtor's explanation is not "satisfactory" because he has not given a rationale that the Court can believe. *See In re Gardner*, 384 B.R. at 669; *In re Bodenstein*, 168 B.R. at 33.

The Court takes account of the Debtor's conviction that the Plaintiff breached the contract of sale and may have failed to inform the Debtor of his lease default or the stipulation of settlement with his landlord. Much of the evidence introduced by the Debtor at trial went to the issue of the Plaintiff's defaults. However, there is no dispute that the Plaintiff is relying on a judgment of the New York Supreme Court that is outstanding and not vacated. Even if it was a default judgment, this Court must recognize it. *Kelleran v. Andrijevic*, 825 F.2d 692, 695 (2d Cir. 1987). The Debtor adduced no evidence that the judgment was fraudulent or void. Accordingly, the Plaintiff's own defaults cannot provide legal justification for the Debtor's failure to counter the Plaintiff's showing under § 727(a)(5).

**Section 727(a)(3)**

Section 727(a)(3) of the Bankruptcy Code denies the debtor a discharge if

---

of the charges on that account is a $2,000 charge at High Class Furniture, one of his relative's furniture stores in New Jersey. *See American Express Bank v. Rodriguez*, Adv. Proc. No. 06-01129 (ALG).

> The debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

To make out a *prima facie* case under § 727(a)(3), the Plaintiff must show "(1) that the debtor failed to keep or preserve adequate records; and (2) 'that such failure makes it impossible to ascertain the debtor's financial condition.'" *In re Jacobowitz*, 309 B.R. 429, 436 (S.D.N.Y. 2004), citing *Meridian Bank v. Alten*, 958 F.2d 1226, 1232 (3d Cir. 1992). If the Plaintiff can make this showing, then the burden shifts to the Debtor to show that his "failure to keep records was justified." *See In re Cacioli*, 463 F.3d at 235; *In re Jacobowitz*, 309 B.R. at 438. As with § 727(a)(5), once a plaintiff has made its initial showing, the burden shifts to the debtor to affirmatively rebut the plaintiff's case. *See In re Gollomp*, 198 at 440 (S.D.N.Y. 1996), citing *In re Bodenstein*, 168 B.R. at 28; *In re Gardner*, 384 B.R. at 662-63 (collecting cases); *see also In re Halzman*, 69 F.2d at 829.

The law mandates complete disclosure before a debtor is granted a discharge, and to the extent books and records are reasonably necessary to allow a creditor to ascertain a debtor's financial condition under the circumstances, they are required. *See In re Underhill*, 82 F.2d 258, 259-60 (2d Cir. 1936), *cert. denied*, 299 U.S. 546 (1936); *Meridian Bank*, 958 F.2d at 1230; *In re Jacobowitz*, 309 B.R. at 436. No intent is necessary—it is sufficient to show that the debtor did not keep the books and records a reasonable person would maintain. *In re Gardner*, 384 B.R. at 665, citing *In re Jacobowitz*, 309 B.R. at 440. "If [the circumstances] were such that others in like circumstances would ordinarily keep financial records [the debtor] must show more than

9

that he did not comprehend the need for them and must carry his explanation by way of justification to the point where it reasonably appears that because of unusual circumstances he was under no duty to keep them." *In re Sandow*, 151 F.2d 807, 809 (2d Cir. 1945).

The Plaintiff has met his initial burden to show that the Debtor failed to keep or preserve adequate records from which the Debtor's financial condition could be ascertained. As noted above, the Debtor testified convincingly that he had owned and operated several apparently successful businesses before he brought the East Tremont furniture store. After the 1993 dispute with the Plaintiff, the Debtor divested himself of any direct interest in the East Tremont store, which reopened under the purported ownership of the Debtor's daughter, who was in her early twenties at the time, and son-in-law. But the record contains ample evidence that the Debtor remained in charge. The Debtor did not dispute that he managed the store, and Eliezer Lopez admitted the Debtor was "in charge." Even if his daughter and son-in-law were the nominal owners, the Debtor produced no records from the store disclosing its income or his salary. Because of the Debtor's failure to do so, it is impossible to determine his true financial condition on the eve of the bankruptcy filing.

The Debtor made no showing that his failure to produce books and records was justified. Moreover, the trial in this case took place over three afternoons, and the first and second days were separated by a weekend. At the close of the first day, the Court commented on the grounds on which the Plaintiff sought to deny the Debtor a discharge:

> One of the grounds is that there aren't books and records and that the Debtor has not kept books and records. And I did ask, I think on the telephone [during a pretrial conference], for the parties' exhibits and documents. I got a very few documents from the Plaintiff and deposition

transcripts. I'll hope to get some documents from the defendant to have in the record.

In response to the Court's statement, made at the end of the second day, that "I asked for some records, of this Debtor—I have none. I have no tax returns, I have no information with regard to his earnings at any time," the Debtor produced only his most recent tax returns. However, there is no question that the Debtor was at least manager of the store. The Debtor should have kept business records, and he offered no explanation why he did not have them save a general denial of any ownership interest in the East Tremont store. The Court finds that the Debtor failed to meet his burden under § 727(a)(3) of rebutting the Plaintiff's *prima facie* case.

### **Section 727(a)(2)**

Section 727(a)(2) of the Bankruptcy Code denies a debtor a discharge if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
> (A) property of the debtor, within one year before the date of the filing of the petition; or
> (B) property of the estate, after the date of the filing of the petition.

In *In re Gollomp*, the District Court held that

> To state a claim under Section 727(a)(2)(A), [the Plaintiff] must show:
> (1) that the act complained of was done during the one year period immediately prior to the date the petition was filed;
> (2) the act was done with actual intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of the property under the Bankruptcy Code;
> (3) the actor was the debtor or his duly authorized agent; and
> (4) the act consisted of transferring, removing, destroying or concealing any of debtor's property, or permitting any of those acts to be done.

11

*In re Gollomp*, 198 B.R. at 439-40, citing *In re Silverstein*, 151 B.R. 657, 660 (Bankr. E.D.N.Y. 1993). The Debtor filed his bankruptcy petition on October 3, 2005. The July 4th weekend transfer occurred within one year of the date of the filing of the petition. The Debtor denied that any transfer out of the ordinary course of business took place. The Court believes that a transfer did in fact take place, based on the testimony of the Plaintiff and his daughter, who wrote down the license plate of the truck making the transfer. The facts also show that the Debtor or Eliezer Lopez took part in the transfer. The Plaintiff and his daughter both testified that the Debtor was directing the loading of the truck and Lopez drove the truck.

There is reason to believe the transfer was not in the ordinary course but was made to hinder or delay the Plaintiff. While there was no testimony bearing directly on the element of intent to hinder, delay, or defraud a creditor or officer of the estate, the Court may infer intent from the presence of certain "badges of fraud." *See Salomon v. Kaiser* (*In re Kaiser*), 722 F.2d 1574, 1582 (2d Cir. 1983); *In re Gollomp*, 198 B.R. at 440. In *Kaiser*, the Second Circuit identified the following factors as badges of fraud:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of the events and transactions under inquiry.

Several badges of fraud are present in this case. The transferee stores were admittedly owned by family or close friends of the Debtor, if not by the Debtor himself. The transfer is consistent with a pattern of conduct dating at least back to 1993, when the

12

Debtor closed the East Tremont store only for it to reopen under his daughter's "ownership" months later, and without paying anything to the Plaintiff. Moises Rodriguez, the purported manager of the two transferee Blue Star stores in the Bronx and the Debtor's nephew, did not appear in Court to testify, and there was no showing he was unavailable. The Court finds the Plaintiff presented sufficient evidence to require the Debtor to come forward with evidence to rebut the Plaintiff's *prima facie* case. *See In re Gollomp*, 198 B.R. at 440.

The final element of § 727(a)(2)(A) is a transfer of the debtor's property. The East Tremont store unquestionably was a corporation. (Plaintiff's Exh. 10.) Property of a corporation, even where the Debtor is the sole shareholder, belongs to the corporation and not the debtor. *See Northeast Neb. Econ. Dev. Dist. v. Wagner* (*In re Wagner*), 305 B.R. 472, 475 (B.A.P. 8th Cir. 2004); *Mcorp Mgmt. Solutions, Inc. v. Thurman* (*In re Thurman*), 901 F.2d 839, 841 (10th Cir. 1990); *Wines v. Wines* (*In re Wines*), 114 B.R. 794, 796 (Bankr. S.D. Fla. 1990). One Court has held: "It does not follow that because the debtor may have caused his corporation to transfer its assets in fraud of its creditors, it should also follow that the transfer of property of another entity should support a denial of the debtor's discharge when he is not charged with having fraudulently transferred any of his own property within the meaning of 11 U.S.C. § 727(a)(2)(A)." *CIT Group/Factoring Mrf. Hanover, Inc. v. Srour* (*In re Srour*), 138 B.R. 413, 419-20 (Bankr. S.D.N.Y. 1992).

There is authority that an individual debtor causing his wholly-owned corporation to transfer property can provide a basis for a denial of discharge under §727(a)(2)(A). *Barclays/American Business Credit, Inc. v. Adams* (*In re Adams*), 31 F.3d 389, 394 (6th

Cir. 1994), *cert. denied*, 513 U.S. 1111 (1995); *see also Compton v. Bonham* (*In re Bonham*), 224 B.R. 114 (Bankr. D. Alaska 1998) (piercing the corporate veil). However, there is no evidence in this case that at the time of the transfer the Debtor was in fact a shareholder of the corporation, or that the corporate formalities were disregarded. Thus, the Court cannot find on this record that the transfer was of the Debtor's property, and the Plaintiff's claim under § 727(a)(2)(A) is denied.

**Section 727(a)(4)(A) and (D)**

Section 727(a)(4)(A) of the Bankruptcy Code denies the debtor a discharge if "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or account." The Plaintiff must prove, by a preponderance of the evidence, that "(1) Debtor made a statement under oath, (2) such statement was false, (3) Debtor knew the statement was false, (4) Debtor made the statement with the intent to defraud creditors, and (5) the statement related materially to the bankruptcy case." *In re Gollomp*, 198 B.R. at 437, citing *In re Kelly*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992); *Baron v. Klutchko* (*In re Klutchko*), 338 B.R. 554, 567 (Bankr. S.D.N.Y. 2005). Omitting a material fact from schedules or statements can also trigger § 727(a)(4)(A). "The party objecting to discharge must show that a debtor omitted information which he knew should have been disclosed in his schedules for the specific purpose of misleading his creditors 'and not simply because the debtor was careless or failed to fully understand his attorney's instructions.'" *In re Gollomp*, 198 B.R. at 437, citing *In re Kelly*, 135 B.R. at 461, and *In re Arcuri*, 116 B.R. 873, 885 (Bankr. S.D.N.Y. 1992).

The Plaintiff has not identified a statement made by the Debtor in his schedules that was knowingly and intentionally made with the requisite intent to defraud creditors.

While fraudulent intent under § 727(a)(4)(A) may be inferred from a "series of incorrect statements contained in the schedules," *In re Gollomp*, 198 B.R. at 438, the Plaintiff did not identify any such statements. To the extent that the Plaintiff's claim under § 727(a)(4)(A) is based on the Debtor's failure to list the Plaintiff as a creditor on his schedules, the claim is unfounded because the Debtor listed lawsuits with the Plaintiff on his Statement of Financial Affairs. Accordingly, the Plaintiff's request for relief under § 727(a)(4)(A) is denied.

Additionally, § 727(a)(4)(D) operates to deny a discharge if

> the debtor knowingly and fraudulently, in or in connection with the case—
> (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

This subsection requires that information be withheld from an officer of the estate, such as a Chapter 7 trustee. There is no evidence that the Debtor failed to cooperate with the Chapter 7 trustee, and relief under this section is denied.

## CONCLUSION

The Court again notes, as it did at the conclusion of this trial, that denying the Debtor a discharge does not guaranty the Plaintiff any recovery. All it means is that the Plaintiff can continue to chase the Debtor, and the Debtor can continue to bear the burden of an old judgment. The Court believes that fifteen years is long enough for this dispute to last, and it should be brought to a conclusion.

However, the Court must decide the issues placed before it. For the reasons set forth above, the Court denies the Debtor a discharge pursuant to §§ 727(a)(3) and (5). The Plaintiff is directed to settle a judgment on five days' notice.

Dated: New York, New York
August 5, 2008

                                              */s/ Allan L. Gropper*
                                              ALLAN L. GROPPER
                                              UNITED STATES BANKRUPTCY JUDGE